# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

## TAMPA DIVISION

|  |  |
|---|---|
| SUNLUST PICTURES, LLC,    ) | |
| ) | |
| ) | |
| Plaintiff,   ) | Civil Action No. |
| ) | 8:12-CV-1685-MSS-MAP |
| v.   ) | |
| ) | *December 31st, 2012* |
| TUAN NGUYEN,   ) | |
| ) | |
| ) | |
| Defendants,   ) | |

## DEFENDANT TUAN NGUYEN'S MOTION FOR SANCTIONS AGAINST NON-PARTY ATTORNEY JOHN STEELE AND REQUEST FOR ORDER TO SHOW CAUSE AND INCORPORATED MEMORANDUM

Defendant, Tuan Nguyen, by and through undersigned counsel, for sanctions and John Steele, pursuant to 28 USC § 1927, and the courts inherent power to issue sanctions, and states in support thereof that:

## DANIEL WEBBER'S DECLARATION AN ATTEMPTED FRAUD ON THE COURT

Defendant files this motion in good faith for sanctions against John Steele alleging that he drafted the fraudulent Declaration of Daniel Webber, (*Dkt. # 40, Ex. A*) the Amended Affidavit of Daniel Weber, (*Dkt # 44,, Ex. A*) and his own Affidavit, the Affidavit of John Steele (*Dkt. # 40, Ex. D*). "When parties and lawyers make false statements to their adversaries and to the court that generate costs, there is every reason for them to pay those costs." *Margo v. Weiss*, 213 F. 3d 55, 62 (2nd Cir 2000).

*Withdrawal of Portion of First Motion for Sanctions*

Defendant previously filed for sanctions against Mr. Steele for his role in the November 27th hearing, and alleged that he drafted the letter sent to the court by Paul Duffy wherein Mr. Duffy stated he could not attend due to eye surgery.  Mr. Duffy has filed a sworn statement that he wrote the letter. *Dkt. # 40, Ex B.*  Therefore, Defendant withdraws only that portion of the previous motion for sanctions against John Steele to the extent that it alleged Mr. Steele wrote Mr. Duffy's eye surgery excuse letter.  In withdrawing that portion of the first motion for sanctions, Defendant has learned the valuable lesson that the name assigned to a specific electronic device does not necessarily mean that a person committed a wrongful act.   Defendant and Defendant's counsel apologize to Mr. Steele for his accusation in that matter.

Defendant still fully seeks the maximum amount of sanctions that can be awarded against John Steele for his role in presenting Mark Lutz to the court and his role in maintaining this action before the court in the previous motion for sanctions, in addition to the sanctions requested here.

## DANIEL 'WEBBER' and DANIEL 'WEBER'

*Declaration of Daniel Webber Was Prepared by John Steele*

The purported Declaration of Daniel Webber (*Dkt # 40, Ex. A*) (misspelling his own name and falsely stating that he was in India at the time of the hearing) was an attempted fraud on the court, made in an effort to endorse the statements made at the hearing by John Steele that the principals of "Sunlust" were in India during the hearing.

(*Dkt. # 28, Pg. 19, Ln. 6*)  The previously mentioned Declaration of Daniel Webber was amended with the Affidavit of Daniel Weber.[1] (*Dkt. # 44, Ex. A*).

*Notice to Opposing Counsel of Fraud on the Court for the Declaration of Daniel Webber results in Affidavit of Daniel Weber*

Defendant informed non-parties of tremendous concern over the Declaration of Daniel Webber (*Dkt. #40, Ex. A*) This fraudulent declaration, much like the fraud upon the court at the November 27th hearing, was offered willingly by the non-parties in a further effort to defraud this court.  The correction of the Declaration of Daniel "Webber", by the Affidavit of Daniel Weber in this case came upon notice, to counsel for the non-parties, that: 1) Daniel Weber misspelled his name and 2) that according to public statements on Twitter made by Daniel Weber, he was in Los Angeles that day, and 3) that the declaration was invalid under 28 U.S.C. § 1746. (*Dkt. #44, Exhibit A*)

After the filing of the Declaration of Daniel Webber, (*Dkt. #40, Exhibit A*) but before the filing of the Affidavit of Daniel Weber, Defendant reached out by phone to the non-parties, and stated that Weber was not spelled with two "B's".  Despite this truth, Counsel for Defendant was informed by non-parties with resounding confidence that Weber was spelled with two "B's" and that any belief that Weber is spelled with one "B" must be based upon faulty information.   Defendant was unaware at that time whether any declaration failed to comport with 28 U.S.C. § 1746, and rested his arguments on the fact that Webber was not spelled with two "B's" in that verbal exchange.

In the same conference, Defendant also relayed to non-parties that he had heard second hand that according to his Mr. Weber's own Twitter posts, he was in Los Angeles

---

[1] Another misspelling of a clients name, John Steele previously misspelled the name of his sometimes client, but not in this case in particular, Sunny Leone.  Dkt #28, Pg. 19, Ln. 1 (Mr. Steele: S-O-N-N-Y, Leone).

when the November 27th hearing was held.  Non-parties explained that they did not follow Twitter and therefore did not understand why it might be important.

Having less than stellar evidence that Mr. Webber's name was truly spelled Weber, and that he did not change his name to the one "B" variation for the purposes of anonymity in appearing in pornography, Defendant was forced into a position where he had to prove to non-parties the correct spelling Daniel Weber.[2]   Defendant was also forced into a position where he had to filter through a jumble of Twitter posts to prove that Mr. Weber was in Los Angeles.  Defendant was further forced to detail a timeline of the whereabouts of Mr. Weber and then explain how the social network "twitter" conflicted with the Declaration of Daniel Webber.

Normally, such information would not be imputed to a non-party, however, because the document filed was a declaration of an individual who spelled his name wrong, the court should immediately be wary of that the Declaration of Daniel Webber and the Amended Affidavit of Daniel Weber, despite the amended affidavit being quite dismissive of the earlier mistakes.[3]  The affidavit does not reference the previous misspelling nor explain it in anyway, and the notarized signature of Daniel Weber contains an extra mark not present in the previous declaration.  (*Dkt. #44, Exhibit A*)

*Why Twitter is Important*

Daniel Weber and Sunny Leone (co-principals of the Plaintiff) use Twitter, an online service which publishes short messages that is often used by celebrities to interact

---

[2] All non-party Attorney's of various states involved in this action, claim to represent, or have represented, the Plaintiff, but not in this particular case.

[3] The Affidavit of Daniel Weber states that he was "unexpectedly in Los Angeles" on the date of the hearing due to a dog surgery.  It does not reference his previous declaration, nor explain how it was that his name happened to be misspelled.  Page 1 of the Affidavit contains no signatures or initials.  Page 2 of the Affidavit contains what appears to be a notarized signature of Daniel Weber, and also has an extra "copy line" running down the middle which is not present on page 1 of that same Affidavit.

with their fan bases.  Twitter is an online service which allows people to send short messages (tweets), and allows for those messages to be viewed, and responded to, in a public forum.  Inadvertent tweets have destroyed political ambitions (e.g. U.S. Representative Anthony Weiner http://abcnews.go.com/Politics/rep-anthony-weiner-picture/story?id=13774605) and purposeful tweets have brought political revolutions in non-democratic countries.  *See* http://www.guardian.co.uk/world/2011/feb/25/twitter-facebook-uprisings-arab-libya

       However, most posts by users of the twitter network are not as politically devastating as Weiner's slip up in publishing an embarrassing photo, or as important as helping to bring about the Arab spring.  People generally share where they happen to be, where they are going, or what they are doing.  Travel plans are a favorite topic among the twittersphere[4] because people rarely have anything to share with the world except where they are going or what they are going to do when they get there.   Tweets have timestamps based on the UTC (Universal Time Clock) which show the times according to where the twitter follower is located within the world.  (i.e. a Tweet in Chicago at 8:45pm would show as 9:45pm to a twitter follower in the Eastern Time Zone)  Mr. Weber's "tweets" are located at https://twitter.com/DanielWeber99/ and Ms. Leone's tweets are available at https://twitter.com/SunnyLeone/ and archives of these tweets have been saved by Defendant if any statements relating to this second motion for sanctions are challenged.

*The First Declaration of Daniel Webber was Fraudulently Executed*

---

[4] The Oxford English Dictionary added "Twittersphere" in 2011 as a word to describe postings made on the social networking site Twitter, considered collectively.
http://www.syracuse.com/news/index.ssf/2011/06/zomg_twittersphere_infographic.html

Defendant spent considerable time writing an e-mail explaining that Weber was in fact spelled with one "B" and that Mr. Weber was in Los Angeles on the 27th of November, 2012, the date of the hearing.  Defendant went so far as to create a timeline of the whereabouts of Mr. Weber for the non-parties based on the twitter entries.  Because non-parties initially denied that "Daniel Webber" was incorrectly spelled on the Declaration, Defendant also ordered documents from the California Secretary of State, which take anywhere from two weeks to a month to obtain in a light season at California's corporation division, and conducted several hours of research.

Defendant takes further issue with the declaration of Daniel Webber, in that it was executed on the 17th, and presumably faxed on the 19th, of December, 2012.  *Dkt. #40, Ex. A* (bottom of both pages, upside down, showing a fax time receipt 08:53 on 12/19/2012).   Statements from Daniel Weber's twitter account show that on Sunday, December 16th, 2012, at 9:49 AM (Mumbai Time) Daniel Weber tweets: "Heading to LA monday...nice to just relax today."  *See* https://twitter.com/DanielWeber99/  On Monday, December 17th the declaration of Daniel Webber was purportedly executed- a day that Mr. Weber was slated to travel.

On December 19th, 2012, at 9:15 AM (Los Angeles Time), shortly after the landing of a particular commercial leg from Mumbai to Los Angeles, Daniel Weber tweets: "Back in LA for 3 days. Then off to NYC christmas time with @SunnnyLeone".  *Id.*  Depending on where the fax was received, as indicated by the fax header present on the declaration, this document was faxed either while Mr. Weber was located in Los Angeles, or was traveling to Los Angeles from Mumbai.  *Dkt. #40, Ex. A* (bottom of both pages, upside down, showing a fax time of 08:53 on 12/19/2012).

Assuming that the fax was in the custody and control of Daniel Weber from execution to transmission, even if Mr. Weber owned or chartered a private jet capable of near supersonic speeds, it is still impossible that the affidavit was executed on the 17th in India and faxed from India on the 19th.  The only possible way Mr. Weber had custody and control of Declaration of Daniel Webber from signing to transmittal, would be that it was executed in India and faxed from Los Angeles, which would just be odd. [5]

When both the declaration of Webber and the affidavit of Weber are viewed in the light of Mr. Wasinger's Urgent Motion to Withdraw, it shows that there is a fundamental friction between the availability of Mr. Weber to speak with his current counsel to protect his own company, versus his ability to produce declarations and affidavits in order to protect Prenda Law.  *See Dkt. #43* (Plaintiff's attorney Wasinger's attempts to contact Mr. Weber without a Mark Lutz filter fall short).

Ms. Leone and Mr. Weber both openly value their business sense, and both have declared some business acumen.  *See* e.g. https://twitter.com/DanielWeber99, November 24th, 2012 (receiving thanks for giving business tips to Holly Randall (photographer), joking about trading business tips for photography lessons.)  *See also* Sunny Leone, "Goddess", the work at issue in this case, at the beginning of the fourth scene, where she states:

> "What I want to be most remembered for in the industry would be that I was a smart business woman and not only did I make good content and make good movies, I want people to know me as not just a girl that got into the industry who was trying to make a quick buck."

---

[5] Delaying a fax defeats the fundamental usefulness of a fax machine, to transmit documents quickly. Mumbai is thirteen and a half hours ahead of Los Angeles, and ten and a half hours ahead of the Eastern Time zone.  Despite the declaration being executed in India, Mr. Weber was in Los Angeles, or airborne when it was faxed.  At first glance, Defendants counsel can come up with about three different lies which might explain this, but none of them are as probable as outright fraud.

Putting aside the lack of natural flow of the dialog within the work "Goddess," based on the self stated business acumen of the Plaintiff's principals, and the Urgent Motion to Withdraw of Matthew Wasinger, the Defendant humbly questions again whether Mr. Weber and Ms. Leone were or are fully informed of 1) the previously made offers to settle this case (*Dkt. #40, Ex. C, paragraph 22*) or 2) the current position of their company in this litigation (*Dkt. #43, Dkt. #38*).

*Amended Affidavit is also Fraud on the Court*

The Affidavit of Daniel Weber states that he was "unexpectedly in Los Angeles" which in itself seems peculiar, but his tweets show that he had dinner in Los Angeles on the 23rd of November and took his dog "Chopper" to the vet on November 24th. (*Dkt. #44*, *contra* https://twitter.com/DanielWeber99)  Mr. Weber had at least three days before the hearing to expect that he would still happen to be in Los Angeles for Chopper. On November 26th, a fan of Mr. Weber or Ms. Leone inquired how Chopper was doing. That same day, Mr. Weber tweeted that his dog Chopper had surgery but was getting better.

Also as a result of looking at Twitter, one can see that Mr. Weber was instead in the studio recording with his rock band, The Disparrows.  Because of Mr. Weber's studio time, Defendant believes that this amended statement about the dog surgery is further lack of candor by John Steele, as the drafter of the Affidavit of Daniel Weber.

On November 28th, 2012, Daniel Weber tweeted: "Shot great footage last night of the Disparrows in the studio recording the 2nd album." So, on the 27th, of November, 2012, Daniel Weber was in the studio working on the Disparrows second album in Los Angeles.  https://twitter.com/DanielWeber99  Combining the twitter accounts of Mr.

Weber and Ms. Leone, it is also apparent that Mr. Weber was in New York City on November 30th, 2012, attending a party at Club Pranna on Madison Avenue and 28th Street.

It is obvious from the public statements made, that as far as Mr. Weber was "unexpectedly in Los Angeles" he was also unexpectedly in New York three days after the hearing, attending a posh New York night club event with the other principal of Sunlust, his wife, Sunny Leone. Defendant found no details as to whether Chopper was also in attendance.

*Request for Monetary Sanctions Against John Steele For*

*Drafting "Webber's" Declaration*

After explaining to the representative of the non-parties that Weber was spelled with one "B" and that Mr. Weber was actually in the country according to his twitter feed, Mr. Syfert expended hours in research online into the spelling of Weber, whether Mr. Weber ever used the variation of two "B's", calculating the time difference between Mumbai, Los Angeles, and Eastern Standard Time, and drafting of an e-mail in order to prove to opposing counsel that such affidavit could not be made in good faith, and the drafting of this motion. Defendant also requested the corporate documents of Sunlust Pictures, LLC, in order to prove that Weber was spelled with one "B" and such documents should be obtained by approximately January 19th, 2013 or possibly two weeks after. Counsel for Defendant later expended .2 hours to the investigation of whether the affidavits complied with 28 U.S.C. 1746. Non-parties have continuously

stated that some of this work should have been delegated out, but Mr. Syfert lacks a

paralegal capable of any of the work billed.[6]

*Questionable Signature of Daniel Webber/Weber*

Defendant makes no statement as to the authenticity of either signature on either

document but places them side by side for ease of comparison and quick reference of the

Court:



The fact that the left hand signature was faxed under strange international

circumstances and is spelled incorrectly should lend itself to the proposition that the left

hand signature is a forgery, but Defendants do not have the originals for expert

inspection. The copy line present in the right hand signature is only on page two, the

signature page of the Amended Affidavit which has a notary stamp of a reputable notary

within the State of California.

*Conclusion on Motion for Sanctions against John Steele for Drafting the Declaration of*

*Daniel Webber and the Affidavit of Daniel Weber*

John Steele drafted the Declaration of Daniel Webber and is therefore responsible

for the work necessary to convince non-parties that Weber is spelled correctly with one

---

[6] Lucy Nord, sole support staff to Graham W. Syfert, Esq., P.A., does simple notice drafting and
communication tasks and is not billable.

"B" and that Mr. Weber was not in India on November 27th.  The defects within the Declaration of Daniel Webber unreasonably multiplied proceedings under 28 USC § 1927 because it contained lies and inaccuracies.  Due to the fact that John Steele drafted both of these documents, John Steele's actions unreasonably lead to 18.2 hours worth of investigation and drafting of this motion, a one hour phone call, and two tenths of an hour reviewing the text of 28 U.S.C. § 1746 and inspecting the affidavits of the non-parties. Counsel voluntarily reduces his request for sanctions to 10 hours.

### FOR LACK OF CANDOR / FRAUD ON THE COURT –

### AFFIDAVIT OF JOHN STEELE

*Confusions in Half-Truths and Outright Lies of Representation of*

*Prenda Law – Sale of Steele Law Firm*

Mr. Steele stated in his affidavit, (*Dkt #40, Ex. D*) that Steele Law Firm was "devoted to Family Law Matters" however, the name of the "Steele Law Firm" was also used in 2011 in various copyright suits filed within the State of Illinois.   One of the core tenets of John Steele's affidavit is that his law firm, Steele Law Firm, was sold on April 1st, 2012.   In Contrast to Mr. Steele's statements, Peter Olson recorded a video of himself on YouTube, stating that the Steele Law Firm merged with his office, saying:

> Hi.  I'm family law attorney Peter Olson and I'm pleased to welcome you to the New Chicago Family Law Group LLC.  Effective March 1st, My firm, the Family Law Offices of Peter R. Olson has merged with the Steele Law Firm, LLC. (http://www.youtube.com/watch?v=m2Z24FMxiO8 , last accessed, Dec 26, 2012)

Mr. Olson, in the video, later states: "Our **three** attorneys have specialized in divorce and paternity cases, including property and financial settlements, and the many issues involving parenting for nearly twenty years." (emphasis added).  The Illinois Bar

Association news also spoke of the March 1st, effective date for a merger, but only lists two attorneys, Peter Olson (Partner) and Kelly Thames (Associate).  (See http://iln.isba.org/blog/2012/05/24/family-law-offices-peter-r-olson-steele-law-firm-join-forces-form-chicago-family-law last accessed Dec 26th, 2012).

Ignoring the April 1st effective date of a closing resulting from a sale of a lawyer retiring from the State of Illinois and therefore abandoning his family law clients, or the March 1st effective date of a merger, which ever is more believable, Mr. John Steele has continued to use the address of 161 N. Clark St, #3200, Chicago past both of those dates. (See attached as Exhibit "A", Declaration of John Steele, dated April 20th, 2012, after any sale of Steele Law Firm, listing his office address as 161 N. Clark St, Suite 3200).   The purpose and requirement within a pro hac declaration such as this, is not to inform the court where the attorney would like to receive mail, or that he is "Of counsel" to Prenda Law.

*Bar Complaints*

Mr. Steele further lacks candor that all the bar complaints against him were "thrown out" because the first bar complaint that Defendant's counsel filed against him resulted in: 1) The sale of Steele|Hansmeier, PLLC to Prenda Law (in an effort to avoid Unauthorized Practice of Law by forming a Florida branch office without a Florida partner) and 2) his signing an Affidavit of No UPL.   The second bar complaint against Mr. Steele was dismissed for lack of evidence, not a lack of probable cause, mainly due to one party filing an affidavit which Mr. Syfert will maintain until the grave was an outright lie to save a friend.

Mr. Steele further lacks candor that all the bar complaints against agents of Prenda Law were thrown out. Mr. Duffy admits in his affidavit, that the Bar made suggestions to him on how he was to carry on his practice. Joseph Perea was another Prenda Law "partner" that Mr. Syfert filed a bar complaint against. Only after Mr. Perea informed the Florida bar that he would no longer be associated with Prenda Law was the matter closed. The complaint by Mr. Syfert against Joseph Perea resulted in him disassociating himself with Prenda Law, and no further punishment, which was the relief requested by Mr. Syfert in that complaint.[7]

Mr. Steele is entitled to his belief that the Florida Bar has not decided the action against Graham Syfert brought by agents of Prenda Law Inc. for a lack of probable cause, but this is a lie. The arguments of non-parties painting Mr. Syfert as a fervent nut job out to destroy Prenda Law[8] are quite compelling, but this factor should not be considered when deciding whether to sanction John Steele or any other attorney for his activities before this Court. The bar complaint against Mr. Syfert was investigated by members of the Florida Bar, and determined to have no probable cause by a panel of lawyers and non-lawyers, "[o]n the basis of a diligent and impartial analysis of all the information available." (quoted from final correspondence to Joseph Perea, *Perea v. Syfert*, the Florida Bar File No. 2012-00,601(4D)).

---

[7] The bar complaint, and all documents and responses and requests by Mr. Syfert against Mr. Perea did not seek any punishment which would have resulted in public embarrassment of Mr. Perea.

[8] Prenda Law, Inc. has already been "destroyed" in a sense. Prenda Law, Inc. is no longer in good standing with the Illinois Secretary of State and the old Prenda Law "group" have formed a new corporate entity, "Anti-Piracy Law Group, LLC, 161 N. Clark St., Suite 3200, Chicago IL 60601" This new Anti-Piracy Law Group entity has already begun sending out demand letters to random people throughout the country, requesting that funds be paid in settlement of Prenda Law cases. Mr. Syfert has already received a phone call from a grandmother asking whether she should pay the $3600.00 demand to the Anti-Piracy Law Group for downloading pornography.

*Complete Disregard of Common Sense and Therefore Lack of Candor in Explaining His*

*Actions During the September 27th Hearing*

Paragraph twenty of Steele's affidavit states that he drove with Mark Lutz to Tampa to observe the hearing before this court, but paragraph twenty-one states that in the middle of the court proceeding, he felt the need to reassure his existence to Mark Lutz. (Dkt #40, Ex. D)  Although they had spent four hours in a car together, found a parking spot together, went through security together, rode up in the elevator together, and entered the courtroom together, John Steele asks this court to believe that he suddenly felt compelled to notify Mr. Lutz, "Hey, I'm here." as if Mr. Lutz was worried about John Steele suddenly abandoning him in Tampa, or turning invisible like a superhero. *Id.*

The courtroom was entirely empty other than court staff, Mr. Lutz, Mr. Steele, Mr. Syfert, and the Defendant.  Mr. Steele was the only person present in the gallery of this court.   Mr. Steele was present when the Court took the bench, and before any proceedings. Mr. Steele did not relieve himself of the Court, and then re-enter- nor did he perform any other disappearing act until after the Court dismissed the case.

Common sense states that Mr. Steele should have no desire or need to reassure Mr. Lutz of his existence within the courtroom in the middle of a proceeding.  Mr. Steele, being an attorney practicing before the federal courts of the various states, should have known that it was improper for him to speak up in the middle of a proceeding.  It is less likely that he was reassuring Mr. Lutz and it is much more likely that Mr. Steele was trying to explain to the struggling Lutz his role as a 1099 contractor who is available to be appointed for Prenda Law clients, or to inform him what attorney was hired.

*John Steele's Inclusion in Torres Talks Shows Further Lack of Candor*

Attorney Torres testified at the hearing that his only communication had been with Brett Gibbs, who has now declared himself to be "Of counsel" to Prenda Law, Inc., a Chicago Law firm, wholly owned by Paul Duffy.  *See Dkt. #28, Pg. 7, Ln. 9* (stating that Torres was contacted by Gibbs).   John Steele has always denied any involvement in this case other than driving with Mr. Lutz to the hearing.

In the Affidavit of Brett Gibbs, he includes e-mail communication between Gibbs and Torres regarding Prenda's great interest in having Mr. Torres file another bar complaint against Graham Syfert for his actions in this case.  *Dkt. #40, Ex. C* (attached as Exhibit "A" to Exhibit "C").   Gibbs blind carbon copies two e-mail addresses in his communication, so that Mr. Torres would not know that they were being sent to those particular individuals.  He blind carbon copies [jlsteele@6881forensics.com](mailto:jlsteele@6881forensics.com) (John Steele, Illinois attorney, subject of this motion) and [prhansmeier@6881forensics.com](mailto:prhansmeier@6881forensics.com) (Paul Hansmeier, Minnesota attorney (also licensed State of Illinois, Minnesota and others), former partner of John Steele)).  *Dkt #40, Ex. C* (attached as Exhibit "A" to Exhibit "C").

John Steele and Peter Hansmeier were supposed to have sold all their interest in Prenda Law, Inc. to Paul Duffy and Joseph Perea when Prenda Law, Inc. purchased Steele|Hansmeier, PLLC.  Also compelling and interesting is the fact that Paul Duffy, the man who sits where the buck is supposed to stop at Prenda Law, is unquestionably absent from inclusion in the correspondence between Gibbs and Torres. *Dkt #40, Ex. C* (attached as Exhibit "A" to Exhibit "C" showing no inclusion of Duffy).

Who Gibbs chose to include on such an e-mail should be explanatory as to where final decisions rest as well as the true management of the many faces of the current

Prenda Law.[9]  Not Mr. Duffy, Illinois Principal.  Not Mr. Wasinger, Florida Plaintiff's counsel.  Not Mr. Lutz, a Corporate Representative "for hire."  Not Mr. Weber or Ms. Leone.  Now that Perea is out of Prenda Law, Paul Duffy is really the only person who should have an interest in what is going on between Torres and Gibbs.  Instead, we find Mr. Steele included. *Id.*  For the level of involvement claimed by Mr. Steele, the urging of Torres to file a bar complaint against Graham Syfert is unnaturally Mr. Steele's concern.  The use of the bcc, or blind carbon copy, ensured that Mr. Torres would not have record of Mr. Steele's or Mr. Hansmeier's involvement in the communication.

Both the e-mail addresses of John Steele and Paul Hansmeier were at 6881forensics.com.  Defendant asks the court to ignore the possibly erroneous belief that "6881 Forensics" is a John Steele – Paul Hansmeier partnership (responsible for the "surveillance" of bittorrent swarms) and is a non-lawyer non-law firm corporation receiving funds resulting from settlements through Prenda Law.  Defendant is also without sufficient information to assert in good faith that Mr. Hansmeier and Mr. Steele are improperly using the entity "6881 Forensics" to split funds from resulting from state (and federal) cases where they are not allowed to practice and do not appear *pro hac vice*.  Defendant has based these possibly erroneous assumptions based on the fact that the money man always needs a pulse on what is happening in their corporation.  One thing is certain- if Mr. Gibbs is acting in an "Of Counsel" capacity to Paul Duffy's Illinois law

---

[9] Media Copyright Group, 6881 Forensics, Steele|Hansmeier, Prenda Law, Anti-Piracy Law Group, Alpha Law Firm (Minnesota – Hansmeier), and Steele Law Firm (Mr. Steele further lacked candor in his affidavit when he claimed that Steele Law Firm was solely a Family Law Firm, he has filed several Copyright cases under the company "Steele Law Firm" name in Illinois in 2011and 2010) and based upon filings of other attorneys throughout the country, included in the many faces of Prenda Law are the companies AF Holdings and Ingenuity 13.  (A former tenant of John Steele (Alan Cooper) is currently accusing Mr. Steele of identity theft in creating a false principal of both of those companies.  *See Ingenuity v. John Doe*, 2:12-cv-08333-ODW-JC (CD Cal.)

firm, then common sense again dictates that Mr. Gibbs would and should have included Mr. Duffy, not John Steele and Paul Hansmeier.

*Conclusion*

The affidavit of John Steele has unreasonably multiplied proceedings under 28 USC § 1927 because it contains lies and inaccuracies, and shows lack of candor to the Court.  The Declaration of Daniel Webber (*Dkt. #40, Ex. A*) was an attempted fraud on the Court, explaining his absence from the hearing first by distance in India, but no mention of a city, and somehow misspelling his own name or signing without reviewing a single word.  The current amended exhibit, the Affidavit of Daniel Weber (*Dkt #44, Ex A*), is another fraud on the Court by claiming an emergency dog surgery during the November 27th hearing, such surgery having occurred at least three days prior to the hearing, according to public statements.  Also according to those public statements, Daniel Weber was recording a new album with his rock band on November 27th, 2012 and a behind the scenes video was recorded.

Although a correction has been issued to the Declaration of Daniel Webber, such correction would have not been made, and fraud would have continued, if not for the actions of Defendant.  The amended Affidavit states that Mr. Weber was "unexpectedly in Los Angeles" due to a dog surgery on the date of the hearing, but evidence from his twitter account shows that he was in Los Angeles on the 23rd of November, and so Mr. Weber had at least four days to expect that he was in Los Angeles on the date of the hearing.   Defendant should not be forced to continuously be a gatekeeper of the correct spelling of the name of Plaintiff's principals or the truth of statements made in this court under penalty of perjury.

WHEREFORE the Defendant requests that the Court issue an Order to Show

Cause why sanctions should not be issued in the amount of $2500.00 against non-party

John Steele for preparing the fraudulent Declaration of Daniel "Webber" and the drafting

of the Affidavit of Daniel Weber, and the drafting of the Affidavit of John Steele, which

lacks candor before the Court.


Dated this 31st day of December, 2012.


Respectfully submitted,
Graham W. Syfert, Esq.,P.A.


By: s/ Graham W. Syfert
        Graham W. Syfert (39104)
        FL/GA Attorney at Law
        1529 Margaret St, Unit 2
        Jacksonville, FL 32204
        Phone: (904) 383-7448
        Fax: (904) 638-4726
        graham@syfert.com

I HEREBY CERTIFY, that a true and correct copy of the foregoing was sent by
e-mail this day, to attorney for the Plaintiffs, Matthew Wasinger,
mattw@wasingerlawoffice.com, and to attorneys for the Non-parties, kyanes@kmf-
law.com, this 31st of December, 2012.


By: s/ Graham W. Syfert
        Graham W. Syfert (39104)

I HEREBY CERTIFY, that pursuant to local Rule 3.01(g) that the moving party
has conferred with non-parties's counsel in a good faith effort to resolve the issues raised
in this motion, and that no agreement on the issues raised in this motion could be
achieved.


By: s/ Graham W. Syfert
        Graham W. Syfert (39104)

Exhibit "A"

# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **AF HOLDINGS LLC,**        ) | |
|        ) | |
|     **Plaintiff,**     ) | |
|        ) | |
| **v.**        ) | **Case : 1:12-cv-00048** |
|        ) | |
| **DOES 1 – 1058,**     ) | **Judge : Hon. Beryl A. Howell** |
|        ) | |
|     **Defendants.**    ) | |
| _____ ) | |

## DECLARATION OF JOHN L. STEELE

I, John Steele, declare pursuant to 28 U.S.C. § 1746 and Local Civil Rule 83.2(d):

1.     I am of counsel with the law firm of Prenda Law, Inc., counsel for Plaintiff, AF Holdings, LLC in the above-captioned action. I submit this declaration in support of Paul A. Duffy's Motion pursuant to Local Civil Rule 83.2(d) for the *pro hac vice* admission of John Steele to the bar of this Court.

2.     My full name is John L. Steele.

3.     My office address is 161 N. Clark Street, Suite 3200, Chicago, Illinois 60601. My office telephone number is (312) 880-9160.

4.     I have also been admitted to practice before, and am a member in good standing of, the bars of the United States Court District Court for the Northern District of Illinois, and the State of Illinois.

5.     I have not been disciplined by any bar.

6.     I have been admitted *pro hac vice* to this Court in one case (1:12-mc-00150-ESH-AK) in the previous two years.

7.      I do not engage in the practice of law from an office located in the District of Columbia.  I am not a member of the District of Columbia bar, nor do I have an application for membership pending.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated:          April 20, 2012

_____
/s/  *John Steele*

John Steele
Prenda Law Inc.
161 N. Clark St., Suite 3200
Chicago, IL 60601
Telephone: (312) 880-9160
Facsimile:   (312) 893-5677

Exhibit "B"

## List of Witnesses

1. Mark Lutz.  Prenda Law. 1111 Lincoln Rd. Suite 400, Miami Beach, FL 33139.    Tel: 305-748-2102.  Mr. Lutz is a paralegal for Prenda Law. He provided an affidavit as to his conversations with Mr. Syfert. The affidavit is available upon request.


RECEIVED
FEB 1 3 2012
The Florida Bar - ACAP
Tallahassee, Florida

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

### TAMPA DIVISION

| | |
|---|---|
| SUNLUST PICTURES, LLC, ) | |
| ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | |
| ) | 8:12-CV-1685-MSS-MAP |
| v. ) | |
| ) | |
| TUAN NGUYEN, ) | |
| ) | |
| ) | PROPOSED ORDER |
| Defendant. ) | |

## <u>ORDER TO SHOW CAUSE</u>

THIS MATTER, having come before this court on Defendant's Second Motion for Sanctions against and John Steele, and the court being informed of its premises:

IT IS THEREFORE ORDERED that non-party John Steele shall respond to this order to show cause within _____ days, why he should not be sanctioned in the amount of $2500.00 for the drafting of the Declaration of Daniel Webber, the Amended Affidavit of Daniel Weber, and for his own lack of candor in his affidavit before this Court.

IT IS SO ORDERED

_____

United States District Judge Mary S. Scriven

cc: Counsel of Record