**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SUNLUST PICTURES LLC,

     Plaintiff,

                Case No. 8:12-CV-01685-MSS-MAP

v.

TUAN NGUYEN,

     Defendant.

_____/

## MEMORANDUM OF NON-PARTY JOHN STEELE IN SUPPORT OF MOTION TO STRIKE AND MOTION FOR SANCTIONS AGAINST DEFENDANT TUAN NGUYEN AND ATTORNEY GRAHAM SYFERT

Non-Party John Steele[1] respectfully moves the Court for three forms of relief. First, the Court should strike Defendant Tuan Nguyen's notice of agreements on motion for sanctions. Doc. 49. Second, the Court should impose sanctions on Defendant's counsel under 28 U.S.C. Section 1927. Third, the Court should issue an order to show cause under its inherent power to address Defendant's apparent fraud on the Court. For the reasons described herein, the Court should grant these requests for relief.

### BACKGROUND

Defendant Nguyen's latest filing. Doc. 49, is his fourth attempt to have sanctions imposed against Steele in a matter that Steele is neither a party to nor attorney of record in. Defendant Nguyen first sought sanctions against Steele and the other non-parties to this

---

[1] Steele files his motion *pro se* because Brett Gibbs' contradictory testimony in this matter has created an apparent conflict of interest that necessitates the Non-Parties' counsel's withdrawal from this matter. *See* Fla. R. Prof. Conduct 4-1.7, 4-1.9, 4-1.16, and commentary. Steele anticipates a motion for withdrawal to be filed by his existing counsel in the coming weeks.

matter (the "Non-Parties") pursuant to 28 U.S.C. Section 1927, on the theory that the Non-Parties had unreasonably multiplied this litigation. Doc. 31. Defendant Nguyen also sought to have Steele and the other Non-Parties held jointly and severally liable for the award of attorney's fees he sought against the Plaintiff, Sunlust Pictures LLC ("Sunlust"). Doc. 35. The Non-Parties, including Steele, responded to both motions. Doc. 40, Doc. 42.

Defendant then filed a second motion for sanctions against Steele. Doc. 46. The Middle District of Florida Local Rules prohibits the filing of a reply brief without leave of court. LR 3.01(c). Defendant Nguyen neither sought nor received leave of the Court to file a reply brief. Much of Defendant Nguyen's second motion for sanctions against Steele responded to matters raised in the Non-Parties' response to his prior sanctions motion and the exhibits to that response.

Defendant has now filed a document titled notice of agreements on motion for sanctions. Doc. 49. Once again, much of Defendant's filing responds to matters raised in the Non-Parties' response to his original sanctions motion.

The background of this matter, numerous facts relevant to the Court's evaluation of Defendant's latest filing, and a discussion of relevant legal principles are set forth in these prior responses. In order to avoid burdening the court record with duplicative filings, rather than repeat the matters contained in the prior responses, Steele adopts and incorporates by reference those responses and will cite to the responses and the corresponding exhibits whenever possible.

I.     **The Court should strike Defendant's notice of agreements and the exhibits attached thereto**

The Court should strike Defendant's notice of agreements. While titled a notice of agreements, the notice is, in actuality, a second unauthorized effort by Defendant to respond to the arguments raised in the Non-Parties' response to Defendant's original sanctions motion. For example, Defendant states, "It is the belief of the Defendant that Mr. Wasinger was duped by Prenda Law and is a victim of their actions, who acted solely upon their direction." Doc. 49 at 2. He further states, "Mr. Wasinger was contacted an[d] hired through Brett Gibbs, however, the use of Brett Gibbs was an effort to conceal and eliminate the identity of John Steele and the other actors within Prenda Law who were directing the case." *Id.* He also states, "Mr. Gibbs ... was acting as merely as [sic] go-between for the managers and litigation decision makers of Illinois attorney John Steele and Minnesota attorney Paul Hansmeier." *Id.* at 5. The overriding purpose of Defendant's notice of agreements is to further attack Steele.

The Court should strike Defendant's notice of agreements for several reasons. First, the Local Rules of this District prohibit the filing of a reply brief without leave of court, which Defendant Nguyen neither sought nor received. LR 3.01(c). Further, Defendant's filing is gratuitous; it bears no relevance to the concerns raised by the Court at the November 27, 2012 hearing. Finally, Defendant's filing attempts to further malign Steele, for whom defendant's counsel harbors deep personal resentment. On these counts, Defendant's notice should be stricken under the Court's inherent power and Federal Rule 12(f). *See* Fed. R. Civ. P. 12(f) ("the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). The fact that this has now

3

become a familiar tactic on Defendant's part does not lessen its impropriety; rather, it magnifies the need for the Court to end this practice.

The Court should also strike the exhibits to Defendant's notice of agreements. All of the exhibits lack foundation (Defendant has not established how he has personal knowledge regarding the authenticity of any of the documents). Fed. R. Evid. 602. The exhibits also constitute inadmissible hearsay and double hearsay. Fed. R. Evid. 801(c). Exhibits B and C also contain irrelevant material. (They concern litigation outside of this case). Fed. R. Evid. 401. For all of these reasons, the Court should strike the exhibits to Defendant's filing.

## II.   The Court should award Steele his reasonable excess costs and attorney's fees pursuant to 28 U.S.C. Section 1927

The Court should award Steele his reasonable costs and attorney's fees pursuant to 28 U.S.C. Section 1927. Steele has been forced to expend substantial resources in defending himself against Defendant's repeated unreasonable and vexatious filings in this matter. The Court never invited a motion for sanctions against Steele. Nor did the Defendant have a good faith basis for bringing one. In a November 27, 2012 e-mail, Defendant's counsel identified his grounds for seeking sanctions against Steele, "I include John Steele because, well, I believe he has the purse strings and I believe he has the most against me personally and he showed up at the hearing today." Doc. 40-6 at 1. Defendant's counsel acknowledged his lack of grounds for seeking fees against Steele:

> I will be requesting fees in the amount of approximately 10K for Nguyen, and filing a motion for sanctions against Wasinger, Gibbs, Duffy, Steele, and Prenda Law, Inc.... *We all know this game. While I might not be successful of [sic] pinning every one of you in, you and I know I will make things incredibly awkward.*

*Id.* (emphasis added).

28 U.S.C. Section 1927 provides, "Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927 allows district courts to sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith. *See Malautea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536, 1544 (11th Cir. 1993). A movant seeking sanctions under 28 U.S.C. 1927 must demonstrate bad faith conduct that unreasonably and vexatiously multiplies the proceedings. *Id.* These elements are present here.

Defendant's basis for seeking sanctions against Steele was his attorney's personal grudge: "I include John Steele because, well, I believe he has the purse strings and I believe he has the most against me personally and he showed up at the hearing today." Doc. 40-6 at 1. Using the federal courts to satisfy a personal grudge is the epitome of bad faith, especially when the filer acknowledges the frivolity of his filings. The purpose of the federal courts is to resolve cases and controversies, not personal disputes. Because Defendant's stated motives for bringing his motions were improper, the Court should find that he acted in bad faith.

Attorney Syfert's bad faith conduct has unreasonably and vexatiously multiplied these proceedings. On November 27, 2012, the Court indicated it would entertain a motion for sanctions against specified persons. Doc. 28 at 20-21. Steele was not one of them. *Id.* Nevertheless, since that time attorney Syfert has filed four independent sanctions motions against Steele. Doc. 31, Doc. 35, Doc. 46, Doc. 49. Each of these filings has required Steele

5

to incur substantial fees to defend against. As demonstrated in the Non-Parties' responses to Defendant's filings, the filings against Steele have lacked even a shred of legal or factual merit. Doc. 40, Doc. 42. Instead of the carefully defined scope of motions invited by the Court at the November 27, 2012, hearing, the docket has been overwhelmed by Defendant's repeated unwarranted filings against Steele and others.

Finally, there is nothing to indicate that Defendant's counsel will stop using this Court as a platform for airing his grievances. Defendant's actions have imposed an extreme burden on both Steele and the Court. The Court should require attorney Syfert to reimburse Steele for the excess financial burden Steele has suffered as a result of Syfert's vexatious filings. The Court should also consider imposing any other sanctions necessary to deter future vexatious filings by Defendant in this matter. The Court is authorized to do so under its inherent power. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-46 (1991) ("[A] court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'").

## III.    Defendant's filing is an apparent fraud on the Court

Defendant's filing is an apparent fraud on the Court. The affidavit attached to Defendant's filing contains demonstrably false testimony that was procured through an offer of settlement. Moreover, Defendant misled the Court regarding the circumstances of procuring the false testimony.

### A.    The affidavit attached to Defendant's filing is demonstrably false testimony

The new Gibbs affidavit is demonstrably false testimony in several independent respects. First, Gibbs falsely characterizes himself as a junior attorney at Prenda Law who

6

was supervised by Steele and Hansmeier.  Second, Gibbs falsely states that he played no role in the recruitment of attorneys Banas, Wasinger and Torres.  Finally, Gibbs falsely states that he played no role in Mr. Lutz's attendance at the November 27, 2012 hearing.

### 1.  Gibbs falsely characterizes himself as a junior attorney at Prenda Law who was supervised by other attorneys

In his December 20, 2012 affidavit, Doc. 40-4, Gibbs testified that his role at Prenda Law, Inc. was to "advise and educate other attorneys working with Prenda Law, Inc., as well as Prenda Law's clients, generally on proceeding in lawsuits protecting the rights of copyright holders in federal court."  Doc. 40-4 ¶ 7.  Gibbs further testified that "In [his] role as an advisor and educator, [he] help[s] Prenda Law, as well as their clients, retain counsel to bring lawsuits in other states, and consult[s] with the lead counsel on those cases as the cases progress."  *Id.* ¶ 8.  He also described his efforts to "help lead counsel prepare documents including motions and responses to facilitate lawsuits representation their clients."  *Id.*  In sum, Gibbs held himself out as an "advisor and educator" with respect to other Prenda Law attorneys, attorneys around the nation and Prenda's clients.  This testimony contradicts Gibbs' new affidavit, which characterizes him as a junior attorney who simply took orders from others.

The record and other evidence also contradict Gibbs' new testimony.  At the November 27, 2012 hearing, attorney Jonathan Torres testified that "[He] was contacted by Brett Gibbs in order to be local counsel to appear on behalf of Prenda Law."  Doc. 28 at 5.  When later asked by the Court, "And who were you contacted by?", Torres responded, "I was contacted by Mr. Brett Gibbs from Prenda Law."  *Id.* at 7.  The Court questioned Torres, "Who is Mr. Gibbs in relation to Mr. Duffy?" Torres responded, "Well, Mr. Gibbs apparently

is a principal at Prenda Law, to my understanding." *Id.* at 11. The tenor of Torres' testimony led the Court to conclude that Brett Gibbs served a substantial role at Prenda Law: "So, Mr. Torres, you don't know who your general counsel is other than Mr. Gibbs...." *Id.* at 12.

Meanwhile, at the same hearing Steele informed the Court, "I'm an attorney, but not involved in this case ... I'm not an attorney with any law firm right now ... but I am certainly familiar with this litigation just because I've been involved in many different cases like this in the past." *Id.* The Court asked for clarification, "But not this case?" Steele responded, "Correct." *Id.* When the Court later questioned Steele regarding Plaintiff, Steele informed the Court, "I no longer actively practice law." *Id.* at 19. The Court confirmed the substance of Steele's statement, "You're not practicing law?" *Id.* Steele responded, "Correct. I do appear occasionally at hearings on an ad hoc basis, but I do not have any current clients." *Id.* Steele further stated, "I want to make very clear to this Court I'm not purporting in any way to be an attorney licensed in the State of Florida." *Id.* No contradictory testimony was presented at the hearing.

Gibbs had an opportunity to offer corrections to the record established at the November 27, 2012 hearing in his December affidavit. To a certain extent he did. For example, while the Court described Gibbs as Prenda's general counsel, Gibbs clarified that he was "Of Counsel." Doc. 40-4 ¶ 5. What Gibbs did *not* do, though, was in any way refute Steele's statements that Steele was not with a law firm or otherwise actively practicing law. *See generally id.* Gibbs even endorsed Steele's statements when he joined Steele's affidavit in the December 27, 2012 filing, in which Steele stated that he had no involvement in this case. Doc. 40-5 ¶ 6.

Testimony from one of Gibbs' former clients, Mark Lutz, also rebuts Gibbs' new testimony.[2]   According to Lutz, Mr. Gibbs was responsible for handling all of his cases nationwide. Lutz Aff. ¶ 4. Lutz further states, "If I ever had a question regarding any of my companies, including AF Holdings and Ingenuity13, I would always speak to Mr. Gibbs." *Id.* ¶ 6. A retainer agreement furnished by Lutz identifies Gibbs as the individual in charge of Lutz's cases and Lutz's primary point of contact at Prenda Law. Lutz Aff. Ex. A.  In a disengagement letter signed by Gibbs, Gibbs described himself as the outgoing "Lead Counsel" for Lutz's companies. Lutz Aff. Ex. B.

Gibbs' own testimony, testimony from the November 27, 2012 hearing, Gibbs' tacit and explicit joining of Steele's statements disclaiming involvement in this case and testimony from Gibbs' *own client* all establish the falsity of Gibbs' "junior attorney" narrative.

### 2.  Gibbs falsely disclaims involvement in recruiting attorneys Banas, Wasinger and Torres.

Gibbs' new affidavit disclaims his involvement in recruiting attorneys Banas, Wasinger and Torres. Doc. 49-1 ¶ 4 ("I believe that it was Mr. Steele that was responsible for locating the various Florida counsel to handle the litigation in Florida on behalf of Prenda Law.") Yet, Gibbs' original testimony described in great detail his role in recruiting and managing these attorneys. Doc. 40-4 at 9-37 (describing his extensive communications with attorneys Banas, Wasinger and Torres). Further, attorney Torres' testimony at the November 27, 2012 hearing identified Gibbs as the individual who recruited him to file cases on behalf

---

[2] Mr. Lutz is the managing member of two of Prenda's clients, AF Holdings LLC and Ingenuity13 LLC.  When Lutz appeared at the November 27, 2012 hearing, he was not appearing on behalf of these entities, but as a corporate representative for Plaintiff. The circumstances of Mr. Lutz's appearance at the hearing are more fully described herein.

of Plaintiff in Florida. Doc. 28 at 7. Torres made no mention of Mr. Steele or anyone else in this regard. *See generally id.* Mr. Steele disclaimed any such involvement. Doc. 40-5 ¶ 6. Finally, Gibbs' response to Defendant's motion for sanctions stated, "Mr. Gibbs assisted Sunlust in this matter by locating and assisting Sunlust to retain counsel in Florida." Doc. 40 at 8. His current statements to the contrary are simply false testimony.

### 3. Gibbs falsely disclaims involvement in Mr. Lutz's attendance at the November 27, 2012 hearing.

Gibbs disclaims any involvement with Lutz's attendance at the November 27, 2012 hearing. Doc. 49-1 ¶ 6. Yet the attached affidavit of Lutz directly contradicts Gibbs' testimony. Lutz Aff. Lutz's affidavit states, "On or about November 21, 2012 I was notified by Brett Gibbs to appear at a hearing as a corporate representative for Sunlust Pictures." *Id.* ¶ 10. Lutz goes on to state that Gibbs informed him that the likely purpose of the hearing was for settlement purposes and that Lutz would qualify as a corporate representative for Plaintiff, particularly in light of the fact that Sunlust previously appointed Lutz as its corporate representative. *Id.* ¶ 9-14. Lutz had a great deal of knowledge regarding the underlying facts relevant to this case, but was not intimately familiar with Plaintiff's corporate structure. Lutz did not anticipate that the Court would be interested in exploring those topics and apologizes for not being more informed in that regard. *Id.* ¶¶ 12-14. Lutz specifically disclaims talking to Steele or Hansmeier about appearing at the November 27, 2012 hearing. *Id.* ¶ 19.

**B.**   **The false testimony attached to Defendant's filing was procured through an offer of settlement**

Syfert approached Gibbs on April 2, 2013, with an offer of settlement. Specifically, Syfert told Gibbs, "I want [you] to sign an affidavit stating that it was 'Person X, at Prenda Law [sic] directed by [sic] activities in the Sunlust v. Nguyen cases [sic] filed in Florida." Steele Aff. Ex. A. Syfert further stated, "If [you] sign an affidavit stating who specifically at Prenda Law directed [your] actions in the Sunlust Florida cases [sic], I will withdraw the motion for sanctions against [you] and ask for no money to be awarded." *Id.* Syfert made obvious whom he wanted "Person X" to be, "I will use it all ... to show that John Steele lied about his involvement in this case, and that he directed Brett Gibbs's actions." *Id.* Syfert's message to Gibbs was clear: lie about John Steele and I will withdraw my motion for sanctions.

The problem, of course, with Defendant's efforts is that he was offering Gibbs something of value to provide testimony that Defendant knew or should have known was materially false. As discussed above, the testimony Defendant sought from Gibbs contradicted both Gibbs' prior statements and the record. Defendant was forced to address the obvious inconsistencies between Gibbs' original and updated testimony. *See* Doc. 49 at 4 ("The Defendant accepts the words of Brett Gibbs as truthful, with all seeming contradictions aside. The contradictions within the statements of Gibbs are indications of an eventual truth coming to light- not a fundamental deception.") Defendant acknowledges that Gibbs' new testimony could be construed as a "fundamental deception." Steele agrees.

C. **Defendant misrepresented the circumstances of his procurement of the false testimony**

Defendant described the circumstances of obtaining Gibbs' testimony as follows:

> Defendant reached out to Brett Gibbs, through current counsel for Mr. Gibbs, and was directed to speak with [attorney] Andrew Waxler.... Specifically, Defendant contacted Mr. Gibbs looking for n [sic] answer as to who directed the litigation in the [sic] this Sunlust case, and who made the decision to place Mark Lutz in the courtroom as a corporate representative of the Plaintiff. The defendant wanted a more definitive statement from Mr. Gibbs that would shed light on the management decisions in this matter.... Mr. Gibbs offered the attached declaration [] against the interests of both John Steele and Paul Hansmeier, the original partners of Steele|Hansmeier [sic] PLLC.

Doc. 49 at 3. Defendant paints a picture in which he contacted Gibbs in the course of investigation and Gibbs provided disinterested testimony regarding Steele and Hansmeier. Defendant fails to disclose that he offered Gibbs consideration for his testimony, that he dictated the content of that testimony and that he knew or should have known that the testimony contained false statements of material fact.

D. **The Court should defend itself against the apparent fraud being perpetrated on it**

A core purpose of the Court's inherent power is to safeguard the integrity of the judicial process. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944) ("Tampering with the administration of justice in [this] manner... involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public."). Defendant's latest filing raises serious concerns regarding whether he is perpetrating a fraud on the Court. Gibbs' new affidavit contradicts his prior sworn testimony and the record. Further, Gibbs' affidavit was procured via an offer of settlement that was not disclosed to the Court. Defendant actively misled the Court regarding the

12

circumstances of the testimony's procurement. Finally, Defendant dictated the content of Gibbs' testimony. Together, these facts are indicia of serious fraud.

The Court has the power and obligation to safeguard the integrity of the judicial process. In his zealousness to settle a score with Steele, Defendant's counsel has apparently crossed the line from zealous advocacy to engaging in serious misconduct. If the Court, after reviewing all of the relevant evidence, finds that Defendant submitted false testimony, then Defendant and his counsel would be in clear violation of 18 U.S.C. Section 1622 (subordination of perjury) and 18 U.S.C. Section 1512 (obstruction of justice). In that circumstance, a referral of Defendant's counsel to the Florida Bar and the U.S. Attorney for the Middle District of Florida would be warranted.

## IV.    Conclusion

For the reasons described herein, the Court should strike Defendant's notice of agreements on motions for sanctions, award Steele his excess costs and fees under 28 U.S.C. Section 1927 and order Defendant to show cause regarding his apparent fraud on the Court.

Respectfully submitted,

John L. Steele
*Pro Se*
1111 Lincoln Road
Miami Beach, Florida 33139

## LOCAL RULE 3.01 CERTIFICATION

I HEREBY CERTIFY that on April 24, 2013, I conferred with counsel for Defendant and we were unable to agree on the resolution of the motion.

_____
John L. Steele

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 26, 2013, I filed the foregoing with the Clerk of

the Court which will send a notice of electronic filing to:

Graham W. Syfert
graham@syfert.com

_____
John L. Steele

14

I, John Steele, under the penalty of perjury, declare and state:

1. I am over eighteen years of age and am competent to testify as to the matters set forth herein. I make this affidavit on the basis of my personal knowledge and, if called, would be prepared to testify as follows.

2. Attached hereto as Exhibit A is a true and correct copy of an e-mail forwarded by Attorney Syfert to my attorney Katherine Yanes.

_____  4/25/13

John Steele

In witness whereof I hereunto set my hand and official seal

_____  4/25/13

Notary Public

My commission expires

Notary Public State of Florida
Jesus Acosta
My Commission DD934833
Expires 10/27/2013

# Exhibit A to Affidavit of John Steele

From: syfert@gmail.com [syfert@gmail.com] On Behalf Of Graham W. Syfert, Esq.
[graham@syfert.com]
Sent: Tuesday, April 02, 2013 6:30 PM
To: Katherine Yanes
Subject: Another Offer and Amendment to Steele Sanctions

Well, the fireworks I expected had water poured on them in the form Prenda law
invoking the 5th amendment at an Order to Show Cause hearing.  Since nothing
new came of this, I will be filing the amendment to the second sanctions against
Steele.

I never heard from you regarding my offers of settlement.  I take it that
means that they were rejected.  Not to be a fussbucket about such things, but I do
hope that each offer was extended individually to each of your clients and not
through solely Mr. Steele, or solely through the
wefightpiracy.org<http://wefightpiracy.org> e-mail system.

All wefightpiracy.org<http://wefightpiracy.org> e-mail systems are controlled
by Mr. Steele and you may not be communicating with your clients.  For example,
Mr. Gibbs is not using his wefightpiracy.org<http://wefightpiracy.org> e-mail
address anymore, and therefore all communication to him will go to Mr. Steele.
Please reach out to Mr. Gibbs directly by telephone with this offer.

I'd like to know specifically the response of Mr. Gibbs to my offer, before I
file this amendment.  By Friday at 11:00 am.  He has already signed an
affidavit stating that it was "Prenda Law" in my case, and now I want him to sign an
affidavit stating that it was "Person X, at Prenda Law directed my activities in
the Sunlust v. Nguyen cases filed in Florida."

If he signs an affidavit stating who specifically at Prenda Law directed his
actions in the Sunlust Florida cases, I will withdraw the motion for sanctions
against Mr. Gibbs and ask for no money to be awarded.

Back to the amendment:

I will be including the Affidavit of John Steele filed where he said he is a
resident of Florida.  I will be including the transcript from the hearing in
California where Gibbs testifies that he was nothing more than a secretary for
John Steele and Paul Hansmeier in Florida cases.  I will be noting that they all
invoked their fifth amendment right at this hearing today involving fraud in
California.  I will be noting that Brett Gibbs states that he was "duped" and that
Matthew Wasinger states that he was "duped" and that generally everyone has
been duped by John Steele.

I will be filing John Steele's response to my second bar complaint against
him, wherein it states that Lutz and Perea are Prenda Law, where Lutz signed an
affidavit stating that I threatened him with a bar complaint.

I will use them to establish both general and specific jurisdiction of the
Tampa court.  I will use it all to show that John Steele is still lying about .  I
will use them to show that John Steele lied about his involvement in this
case, and that he directed Brett Gibbs's actions.

I will also be notifying the court that Matthew Wasinger has agreed to pay me
$500.00 and that such motion for sanctions is withdrawn.

I will be telling the court that given the level of involvement of Mr. Steele,
directing the actions of Mr. Gibbs, and therefore, any attorney beneath them,
and that he should have filed a Pro Hac Vice application in this matter.

There's not really anything more to discuss, but I'm available by phone.  I
will file this by Friday unless I hear from you sooner regarding Mr. Gibbs's
offer specifically.


------------
Graham W. Syfert
Florida/Georgia Attorney at Law

http://www.syfert.com/

Graham W. Syfert, Esq., P.A.
1529 Margaret Street, Ste 2
Jacksonville, FL 32204
Phone: (904) 383-7448<tel:%28904%29%20383-7448>
Fax: (904) 638-4726<tel:%28904%29%20638-4726>

graham@syfert.com<mailto:graham@syfert.com>

NOTICE: The information contained in this email message is intended only for
the personal and confidential use of the recipient(s) named above. This message
may be an attorney-client communication and as such is privileged and
confidential. If the reader of this message is not the intended recipient or an agent
responsible for delivering it to the intended recipient, you are hereby notified
that you have received this communication in error.

I, Mark Lutz, under the penalty of perjury, declare and state:

1. I am over eighteen years of age and am competent to testify as to the matters set forth herein. I make this affidavit on the basis of my personal knowledge and, if called, would be prepared to testify as follows.

2. I manage various adult content related companies, including AF Holdings LLC and Ingenuity13 LLC.

3. In 2011, when I was still working as a paralegal for Steele Hansmeier, I met Brett Gibbs, who was counsel for all the California cases for Steele Hansmeier.

4. When the clients from Steele Hansmeier went over to Prenda Law in November 2011, Mr. Gibbs began to take on more responsibility for the cases nationwide.

5. I also became a client of Mr. Gibbs and Prenda Law on or around November 2011 when I signed a retainer agreement between my new adult companies that I had been building. The retainer agreement made it clear to me that Mr. Gibbs would be handling all of my cases nationwide. I have attached a true and correct copy of that retainer agreement as Exhibit A.

6. If I ever had a question regarding litigation involving any of my firms, including AF Holdings and Ingenuity 13, I would always speak to Mr. Gibbs.

7. Based on conversations I had with Mr. Gibbs, I understood that Mr. Gibbs was overseeing litigation for Sunlust Pictures as he was with my companies.

8. On or about November 21, 2012, I was notified by Brett Gibbs that my attendance at a hearing appear at a hearing before this Court as a corporate representative for Sunlust Pictures.

9. Mr. Gibbs and I discussed the probable purpose of the hearing and my role at the hearing.

10. Mr. Gibbs said that my experience as an owner of several adult content companies, and my experience dealing with pirates and hackers who stole my own content would help the Court evaluate the circumstances of this case.

11. I know of the owner of Sunlust Pictures, Daniel Webber, and have spoken to him and his wife, Sunny Leone, multiple times in the past.

12. I did have an opportunity to review the case with Mr. Gibbs and I do feel like I was prepared for purposes of acting as a corporate representative. Due to the lack of specific areas that the corporate representative was to be informed of, I assumed knowledge of the actual case, and experience in these type of cases was what this Court was seeking by way of ordering the appearance of a corporate representative.

13. Had the order I reviewed with Mr. Gibbs ordered a Sunlust Productions corporate representative to appear and be ready to discuss the internal corporate structure of Sunlust Productions, I would have made certain to be prepared for questions relating to such matters.

14. I apologize for misunderstanding this court's expectations of what the corporate representative was expected to know.

15. I prepared for the hearing on November 27, 2012, with Mr. Gibbs. This is standard practice since I normally speak to Mr. Gibbs regarding any hearings that come up in any of my own cases.

16. I drove up to Tampa for the hearing with Mr. John Steele, who was working with me on unrelated, albeit urgent, business matters during that week. I mentioned why I needed to appear at the hearing to Mr. Steele, and it was clear from Mr. Steele's responses that he had no knowledge of this case.

17. I never spoke to Mr. Steele, Mr. Duffy or Mr. Hansmeier about this case prior to the hearing.

18. Mr. Gibbs stopped serving as lead counsel for my companies on January 29, 2013 when he left Prenda Law. I have attached true and correct copies of disengagement letters I received from Mr. Gibbs, in which he indicated that Mr. Duffy would be the new lead counsel for my companies, as Exhibit B.

Mark Lutz                          4/25/13

In witness whereof I hereunto set my hand and official seal

                                   4/25/13

Notary Public
My commission expires:

Notary Public State of Florida
Jesus Acosta
My Commission DD934633
Expires 10/27/2013

# Exhibit A to Affidavit of Mark Lutz



## ENGAGEMENT LETTER

### November 15, 2011

*Re:*   *Anti-piracy legal services for AF Holdings LLC and Ingenuity 13 LLC, (and/or its related entities).*

Dear Mr. Lutz:

Prenda Law Inc. ("Prenda") will provide legal services to your company and the scope of the services we will render, the manner of calculating, billing and collecting legal fees, and other aspects of the proposed representation are mutually agreed to be as follows:

<u>Services to be Provided</u>

The firm has been engaged to provide to following services:  commencing discovery and settlement efforts against individuals who have been identified as infringing on your company's creative content or who have been identified as hacking into your company's web servers.

Although I will be working on several of your cases, you will have multiple counsels throughout the country involved in cases involving your companies.  The attorney who will be overseeing your company's litigation, and your primary contact at Prenda Law, will be Brett Gibbs.  Of course, you can always contact me as well.

<u>Excluded Services</u>

The firm has not been engaged to provide any legal services other than those described above.

<u>Fees and Expenses</u>

damages against persons who access your web servers or steal your copyrighted content without permission. Expenses related to filing the cases and billed by third parties include filing fees, ISP fees, and courier fees, and will be paid for out of your portion of the revenue.

### Client Cooperation

To enable us to represent you effectively, it is critical that you cooperate fully with us in all matter relating to our representation. We must rely on you to disclose fully and accurately all facts and documents that may be important to our services and you provide other information we request.  When we start working on your matter or as the matter progresses, we may express opinions, beliefs or assessments concerning the subject of our representation and the results that might be anticipated. Statements made by any member or employee of Prenda are intended only to be expressions of opinions based on the information available to us at the time, and are not, of course, a promise, assurance or guarantee.

### Timetable

It is difficult to accurately estimate the time we will take to conclude this matter. Generally, these matters will be ongoing until theft of your content piracy has abated, unless developments in technology or the law undo the model. This is only an estimate, and the actual time required to conclude this matter may be longer than expected.

### Documentation

Due to the very special nature of the legal work provided, you understand that sensitive information regarding putative pirates, John Does, and subscribers related to suspected infringement will not be provided to you and shall be kept safe in our facilities until Prenda deems that the information is no longer needed.  All parties understand that after a particular person or entity has settled or is otherwise released from any potential liability, or if Prenda believes the subscriber's information is no longer necessary, your instructions are to destroy the subscriber information.  It is standard practice in the legal field for law firms to retain records for longer periods of time than outlined in this retainer agreement.  However, due to your concern over your liability if third parties illegal access Prenda Law's data, you have instructed us to immediately remove any data-including subscriber information--that is no longer necessary for the prosecution of a current matter.  You agree to hold Prenda Law harmless for following your directions regarding document retention described herein.

### Your Right to Terminate Representation

You may terminate this representation at any time with or without cause by notifying us in writing of your desire to do so. Upon receipt of the notice to terminate representation, we will stop filing any new cases on your behalf and shall work diligently to conclude any pending matters.

If you terminate the representation before the conclusion of the matter, we will be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work must be performed, or experience, ability, reputation, the responsibility involved and the results obtained.

### Our Right to Terminate Representation

We may terminate or representation (to the extent permitted by the ethical and court rules) at any time if you breach any material term of this agreement or fail to cooperate or follow our advice on a material matter, if conflict of interest develops or is discovered, or if there exists at any time any fact or circumstance that would, in our opinion, render our continuing representation unlawful, unethical, or otherwise inappropriate. If we elect to

terminate out representation, you will take all steps reasonably necessary and will cooperate as reasonably required to free us of any further obligation to perform legal services, including the execution of any documents necessary to complete our withdrawal from representation in accordance with the provision of this agreement.

On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have any questions, please feel free to contact Brett or myself. Otherwise, please confirm your understanding of this agreement by signing below and sending it back to Brett Gibbs at your convenience.

Sincerely,

/s
Paul A. Duffy. Esq.
*Licensed only in IL, MA, DC*
On behalf of Prenda Law Inc.

I agree to the terms described herein:

Mark Lutz
CEO, AF Holdings LLC and Ingenuity 13 LLC

# Exhibit B to Affidavit of Mark Lutz

# BRETT L. GIBBS, ESQ.
## ATTORNEY AT LAW

January 29, 2013

Brett L. Gibbs, Esq.

38 Miller
Avenue, #263

Mill Valley

California, 94941

P: 415.325.5900

blgibbs.wefightpiracy.com

Mark L. Lutz
Corporate Representative of Ingenuity13 LLC
C/O Ingenuity13 LLC
Springates East
Government Road
Charlestown, Nevis

_**Via Email and US Mail**_

*Re:*     *Ingenuity13 Case Nos.: 12-1967, 12-1969, 12-4216, 12-1839, 12-1843, 12-4445, 12-4449, 12-4450, 12-2093, 12-4980, 12-4981, 12-4978, 12-4979, 12-4976, 12-4977, 12-2318, 12-2319 .*

     *Confirmation of Withdrawal as Counsel*

Dear Mr. Lutz:

Per our discussion this afternoon, I will be withdrawing as counsel of record in all of the above-referenced cases. Also, per our discussion, Mr. Paul Duffy will be substituting and entering his appearance as lead counsel in all of the above cases.

This is letter is a confirmation of these mutually agreed upon actions. As we both agree, Mr. Paul Duffy will be sufficient in handling the above cases as lead counsel.

Sincerely,

Brett L. Gibbs, Esq.,

CC: Paul Duffy, Esq. (via email)

BRETT L. GIBBS, ESQ.
ATTORNEY AT LAW

January 29, 2013

Brett L. Gibbs, ESQ.

38 Miller
Avenue, #263

Mill Valley

California, 94941

P: 415.325.5900

blgibbs@wefightpiracy.com

Mark L. Lutz
Corporate Representative of AF Holdings LLC
C/O AF Holdings LLC
Springates East
Government Road
Charlestown, Nevis

*__Via Email and US Mail__*

*Re:* *AF Holdings Case Nos.: 12-1064, 12-1066, 12-1067, 12-1068, 12-1075, 12-1078, 12-1079, 12-2049, 12-2394, 12-2393, 12-2404, 12-2411, 12-2415, 12-1654, 12-1656, 12-1657, 12-1659, 12-1660, 12-1661, 12-1663, 12-3249, 12-1519, 12-1523, 12-1525, 12-4219, 12-4221, 12-1840, 12-2204, 12-2206, 12-2207, 12-4446, 12-4982.*

*Confirmation of Withdrawal as Counsel*

Dear Mr. Lutz:

Per our discussion this afternoon, I will be withdrawing as counsel of record in all of the above-referenced cases. Also, per our discussion, Mr. Paul Duffy will be substituting and entering his appearance as lead counsel in all of the above cases. Per our conversation, I will remain as counsel of record on Case No. 12-2396 through the Early Neutral Evaluation hearing; after which time, I will be withdrawing as counsel and substituting with Mr. Duffy.

This is letter is a confirmation of these mutually agreed upon actions. As we both agree, Mr. Paul Duffy will be sufficient in handling the above cases as lead counsel.

Sincerely,

Brett L. Gibbs, Esq..

CC: Paul Duffy, Esq. (via email)